UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JASON SCOTT LYNCH,

       Plaintiff,

v.                          Civil Action No. 2:17-cv-04310

REM COMMUNITY OPTIONS, LLC,

       Defendant.

MEMORANDUM OPINION AND ORDER

      Pending is REM Community Options, LLC's ("REM") motion
to dismiss or, alternatively, for a more definite statement,
filed November 17, 2017.

I. Factual and Procedural Background

      Jason Scott Lynch ("Mr. Lynch") is a West Virginia
resident. (Compl. ¶ 1.) REM is a West Virginia limited
liability company with its principal place of business in
Boston, Massachusetts.[1] (Id. ¶ 2.) REM employed Mr. Lynch for

_____

[1] The complaint does not identify the exact services that REM
provides. As discussed more fully herein, the parties cite as
pertinent to Mr. Lynch's claims against REM regulations under
title 64, series 11 of the West Virginia Code of State Rules,
titled "Behavioral Health Centers Licensure." Presumably, then,
REM is a "center" under that series, which is defined as an
"entity that provides" "inpatient, residential or outpatient
service[s] for the care and treatment of persons with mental

nineteen years, most recently as one of its regional directors, before terminating Mr. Lynch's employment on May 9, 2017. (See id. ¶¶ 3, 7.)

Before his termination, "[Mr. Lynch] made numerous complaints about [REM's] lack of direct service and nursing staff and [REM's] failure to follow treatment plans as a result of the lack of these staffing." (Id. ¶ 4.) Specifically, Mr. Lynch complained to REM that the lack of staffing "resulted in lack of nurses to monitor care of clients served by [REM], staff working excessive hours to provide client care, lack of training of staff members, [and] failure to administer medication as required." (Id. ¶ 5.) These problems caused Mr. Lynch "to operate with uncertified staff passing medications due to lack of nurses." (Id. ¶ 6.)

Audits by KEPRO, an agency "under contract with the West Virginia Department of Health and Human Resources [("WVDHHR")] to monitor compliance by [REM] and others with the IDD [intellectual/developmental disabilities] waiver program," showed that "[Mr. Lynch's] area was equal to or better than other areas of [REM's] operation" regarding deficiencies identified by KEPRO. (Id. ¶¶ 8-9.) Nevertheless, REM issued to

illness, developmental disabilities or substance abuse." W. Va. Code R. §§ 64-11-3.6, 3.7 (West 2018).

Mr. Lynch a "plan of correction," with which Mr. Lynch always complied.  (Id. ¶ 10.)

On May 4, 2017, REM notified Mr. Lynch of his termination, stating that Mr. Lynch had failed to "communicat[e] the number of nurses needed during a reduction in work force, hav[e] an established medication pass schedule, get[] bed bug eradication treatments done as needed and hav[e] []sufficient certified staff to pass medications." (Id. ¶ 7.)  Mr. Lynch alleges, to the contrary, that he

> reported the additional staffing needed both verbally
> and in writing but [REM] refused to provide additional
> nurses. . . .  The medication pass schedule was
> established as requested but [REM's] failure and
> refusal to adequately staff the positions resulted in
> inability to timely implement medication pass schedule
> for clients of [REM].  Bed bug treatment was ongoing
> and [Mr. Lynch] was in no worse condition regarding
> the bed bug infestation than were other regional
> directors who were not disciplined by [REM] over this
> issue.  [Mr. Lynch] did lack certified staff to pass
> medications, but the same situation existed in all
> West Virginia offices and other regional directors . .
> . were not disciplined for [this reason].
> Additionally, [Mr. Lynch] had requested additional
> direct care workers, nurses and supervisors from [REM]
> for approximately two years preceding his termination
> and was refused.

(Id.)

Mr. Lynch initiated this action in the Circuit Court of Wood County, West Virginia, on October 2, 2017.  He claims that REM violated a substantial West Virginia public policy when REM fired him "in retaliati[on] . . . for requesting adequate

3

staffing to provide patient care." (Id. ¶ 11; accord id. ¶ 12.)
Mr. Lynch seeks lost wages and benefits, damages for emotional
distress, punitive damages, costs and attorney's fees, and
reinstatement. (Id. WHEREFORE Clause.)

REM removed the action to this court on November 10,
2017, invoking the court's diversity jurisdiction. See 28
U.S.C.A. §§ 1332(a)(1), 1441 (West 2018). On November 17, 2017,
REM moved to dismiss the complaint or, alternatively, for a more
definite statement. REM argues that Mr. Lynch has failed to
"plausibly allege any substantial public policy implicated by
REM's decision to terminate his employment." (Mem. Supp. 3.)
Alternatively, REM insists that a more definite statement
regarding "the specific standard [Mr. Lynch] alleges implicates
a substantial public policy" is necessary for it to reasonably
prepare a response. (Id. 15.)

II. Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that
a pleading "contain . . . a short and plain statement of the
claim showing that the pleader is entitled to relief."
Correspondingly, Rule 12(b)(6) provides that a pleading may be
dismissed for a "failure to state a claim upon which relief can
be granted."

4

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 555).

A district court's evaluation of a motion to dismiss is underlain by two principles. First, when considering a motion to dismiss, the court "must accept as true all of the factual allegations contained in the [pleading]." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted); see also Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citations omitted). In

doing so, factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true. Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Second, the court must "draw[] all reasonable factual inferences . . . in the [nonmovant's] favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); see also Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) ("[T]he complaint is to be liberally construed in favor of plaintiff.").

## III. Discussion

Mr. Lynch presents a Harless retaliatory discharge action, which is a common-law action named as a reference to the case in which the action originated, Harless v. First National Bank in Fairmont, 162 W. Va. 116 (1978). The Harless court held that

> [t]he rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., id. at 116. The Supreme Court of Appeals of West Virginia instructs that the State's "constitution, legislative enactments, legislatively approved regulations, and judicial

6

opinions" are the "sources of public policy for purposes of
determining whether a retaliatory discharge has occurred." Syl.
Pt. 6, Williamson v. Greene, 200 W. Va. 421, 423 (2000) (quoting
Syl. Pt. 2, Birthisel v. Tri-Cities Health Servs., Corp., 188 W.
Va. 371, 372 (1992)). Furthermore, to be considered
"substantial," the source of the public policy must "provide
specific guidance to a reasonable person." Syl. Pt. 7, id.
(quoting Syl. Pt. 3, Birthisel, 188 W. Va. at 377); see also
Feliciano v. 7-Eleven, Inc., 210 W. Va. 740, 745 (2001) ("[T]o
be substantial, a public policy must not just be recognizable as
such but must be so widely regarded as to be evident to
employers and employees alike."). "A determination of the
existence of public policy in West Virginia is a question of law
. . . ." Syl. Pt. 1, Cordle v. Gen. Hugh Mercer Corp., 174 W.
Va. 321, 322 (1984).

        Mr. Lynch alleges that REM fired him in retaliation
for his complaints that REM was failing to comply with WVDHHR
staffing regulations. (Id. ¶¶ 5-6, 11-12.) Although Mr. Lynch
neglects to list in the complaint any particular regulation,
both parties in their briefs cite the following two regulations
as pertinent to Mr. Lynch's claims:

        The Center shall provide an adequate number of
        qualified personnel during all hours of operation to
        support the functions of the Center and ensure the

provisions of quality care.  W. Va. Code R. Ann. § 64-
11-5.6.a (West 2018).

Within programs, groupings [of consumers] shall occur
that[] . . . [p]rovide staff to consumer ratios for
adequate protection and supervision.  Id. § 64-11-
6.7.a.2.

(See Mem. Supp. 10; Resp. Opp'n 2; Reply Supp. 1.)  Review of

the following definitions is necessary to understand these brief

provisions:

"Center" is defined as "an entity that provides
behavioral health services."  W. Va. Code R. Ann. §
64-11-3.7.

"Service" is defined as "a functional division of a
program; the delivery of care."  Id. § 64-11-3.43.

"Staff" is defined as "personnel paid by the center to
provide services."  Id. § 64-11-3.44.

"Program" is defined as "a system of services designed
to address the treatment needs of consumers."  Id. §
64-11-3.34.

And "consumer" is defined as "an individual receiving
treatment or services in or from the Center."  Id. §
64-11-3.9.

For reasons explained below, the court concludes that Mr. Lynch

has failed to identify a substantial public policy sufficient to

sustain his Harless retaliatory discharge action.[2]

_____

[2] Mr. Lynch's failure to identify the source of substantial
public policy may alone be grounds for dismissing his Harless
action.  See Wiley v. Asplundh Tree Expert Co., 4 F. Supp. 3d
840, 845 (S.D. W. Va. 2014) (Johnston, J.); cf. Roth v.
DeFeliceCare, Inc., 226 W. Va. 214, 221 (2010) (citing Syl. Pt.
8, Page v. Columbia Nat. Res., 198 W. Va. 378 (1996)) ("The
burden is on the plaintiff to establish the existence of a
substantial public policy.").  Nevertheless, "[t]he [c]ourt will

REM argues that these regulations are too vague and
general to constitute substantial public policy. (See Mem.
Supp. 10; Reply Supp. 3.)  Indeed, the Supreme Court of Appeals
of West Virginia holds that "[a]n employer should not be exposed
to liability where a public policy standard is too general to
provide any specific guidance or is so vague that it is subject
to different interpretations."  Birthisel, 188 W. Va. at 377.
"[T]he policy principle [must] be clearly recognize[able]," id.,
and courts "must exercise restraint" when ascertaining whether
stated public policy is substantial, Yoho v. Triangle PWC, Inc.,
175 W. Va. 556, 561 (1985).  With these considerations in mind,
our court of appeals has "recognized . . . [that] West Virginia
courts have proceeded with 'great caution' in applying public
policy to wrongful discharge actions."  Washington v. Union
Carbide Corp., 870 F.2d 957, 962 (4th Cir. 1989).

        In particular, REM contends that the WVDHHR
regulations establish only "general standards and procedures for
the licensure of behavioral health services and programs."
(Mem. Supp. 10-11. (quoting W. Va. Code R. § 64-11-1.1)
(emphasis omitted).)  REM points out that § 64-11-5.6.a requires
behavioral health centers to provide "'qualified personnel' to

---

assume for the sake of efficiency in this litigation that the
[c]omplaint properly identified" the two WVDHHR regulations
produced above.  Wiley, 4 F. Supp. 3d at 845.

support its 'functions' and ensure 'quality care,'" noting that the WVDHHR regulations fail to define each quoted term. (<u>Id.</u> 11.) REM insists that the rule's use of "adequate" further compounds the issue since the rule lacks "specific guidelines . . . as to what is 'adequate'" in this respect. (<u>Id.</u>) Similarly, regarding § 64-11-6.7.a.2, REM highlights the corresponding use of "adequate" in describing the number of staff necessary to ensure "protection and supervision" of consumers. (Reply Supp. 4 n.5.)

Mr. Lynch minimizes the lack of specificity in the WVDHHR regulations. (<u>See</u> Resp. Opp'n 2.) He responds that "he has alleged that [REM] was not complying with a condition of its licensure, that he raised this concern, and that he was terminated for it." (<u>Id.</u>) Thus, according to Mr. Lynch, he has stated a plausible <u>Harless</u> retaliatory discharge action because there was a basis for his complaints to REM. (<u>See</u> <u>id.</u>)

Although he does not expressly say so, Mr. Lynch's response generally tracks the four elements of a <u>Harless</u> retaliatory discharge action. Under a <u>Harless</u> retaliatory discharge action, a plaintiff must prove the following:

> 1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the <u>clarity</u> element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the <u>jeopardy</u> element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the <u>causation</u> element).

4. The employer lacked overriding legitimate business justification for the dismissal (the <u>overriding justification</u> element).

<u>Herbert J. Thomas Mem. Hosp. Ass'n v. Nutter</u>, 238 W. Va. 375, 386 (2016) (emphases in original and footnote omitted).  REM, on the other hand, questions only whether Mr. Lynch has adequately plead the clarity element, (<u>see</u> Mem. Supp. 9-12), and the court constrains its analysis to that point.

Both parties rely upon <u>Tudor v. Charleston Area Med. Ctr., Inc.</u>, 203 W. Va. 111 (1997).  In that case, the Supreme Court of Appeals of West Virginia found that West Virginia Code of State Rules section 64-12-14.2.4, which "is part of a regulatory scheme governing the licensure of hospitals," manifested a substantial public policy.  <u>See</u> <u>id.</u> at 123-25.  The court quoted the regulation, promulgated by the WVDHHR, as follows:

14.2.4. There shall be an adequate number of licensed registered professional nurses to meet the following minimum staff requirements:

. . .

d. A registered professional nurse shall be on duty and immediately available for bedside care

> of any patient when needed on each shift, 24
> hours per day and seven days a week.
>
> e. Licensed practical nurses as needed to
> supplement registered professional nurses in
> appropriate ratio to professional nurses.
>
> f. Auxiliary workers as needed to provide
> physical care and assist with simple nursing and
> clerical procedures not requiring professional
> nurses.

Id. at 123 (omission in original).

The Supreme Court of Appeals emphasized that the rule mandated an "'adequate' number of registered nurses be available to meet 'minimum' staffing requirements." Id. (quoting W. Va. Code R. § 64-12-14.2.4). Additionally, the court found highly persuasive that the rule mandated a nurse be "immediately available for bedside care of any patient when needed." Id. (emphasis in original) (quoting W. Va. Code R. § 64-12-14.2.4). Thus, the court decided that "it does not take an in-depth analysis . . . to hold that [the rule] sets forth a specific statement of a substantial public policy" of providing immediate medical care, protecting against inadequate staffing, and assuring the provision of medical care to those "who must depend upon others to protect their medical interests and needs." Id. at 124. In a footnote, the court also noted the existence of additional supporting evidence, pertinent to the particular facts of that case, indicating consistent staffing deficiencies,

unsafe staffing practices, and violations of various internal

staffing policies at the defendant hospital.  Id. at 123 n.28.

REM contrasts the two WVDHHR regulations relied upon

in this case with the Tudor regulation, generally stating that

the two WVDHHR regulations "apply to all staff and do not

include any baseline by which a behavioral health facility could

measure whether it employs an adequate number of staff," whereas

the Tudor regulation delineated the "minimum" staffing

requirement targeted at assuring the "immediate[]

availab[ility]" of "professional nurses."   (Reply Supp. 6; see

Mem. Supp. 12-14.)  Mr. Lynch reads Tudor broadly, arguing that

both Tudor and this action involve a regulation promulgated by

the WVDHHR directed towards "maintain[ing] proper staff levels

in a facility." (Resp. Opp'n 3.)  Thus, Mr. Lynch insists that,

by virtue of the staff-related nature of the two WVDHHR

regulations, he has identified a substantial public policy.

(See id. 2-3.)

At the outset, Mr. Lynch, in urging the court to find

the outcome of Tudor controlling in this action because it also

involved a staffing regulation promulgated by the WVDHHR,

overstates the weight and character of precedent in the Harless

lineage of case law.  Instead, "the particular circumstances of

each case" drive the determination of whether a substantial

public policy exists. <u>Cordle</u>, 174 W. Va. at 325 (quoting <u>Allen</u>
<u>v. Commercial Cas. Ins. Co.</u>, 37 A.2d 37, 39 (N.J. 1944)); <u>see</u>
<u>also</u> <u>Mitchell v. Broadnax</u>, 208 W. Va. 36, 45 (2000), <u>superseded</u>
<u>by</u> <u>statute</u> <u>on</u> <u>other</u> <u>grounds</u>, W. Va. Code Ann. § 33-6-30(c) (West
2018) ("[D]ecision of a public policy issue is a legal query,
but such a determination is made on a case-by-case basis . . .
."). Consequently, the substantial public policy decision in
<u>Tudor</u> is limited to the particular regulation at issue there.

The court notes that the WVDHHR regulations at issue
in this action are facially general and vague. Assuming
arguendo that terms such as "qualified personnel," "quality
care," and "functions" are sufficiently specific to guide a
reasonable person, there is nothing against which to measure
these terms. "Adequate" is the only guidance available. <u>See</u> W.
Va. Code R. Ann. §§ 64-11-5.6.a, 64-11-6.7.a.2. Surely,
"adequate" staffing is anchored to the provision of "quality
care" and "protection and supervision," but this leads to
circular reasoning. For example, an adequate staff is that
which can ensure quality care, while quality care is that which
is provided by an adequate staff.

Moreover, "adequate" as it is used here is not a
static concept. What is adequate one day does not account for
the vagaries of the "consumers" served by behavioral health

centers.  See, e.g., W. Va. Code R. § 64-11-7.3 (describing the

individualized, case-by-case basis on which behavioral health

centers must assess treatment plans for each consumer).  Thus,

the court – and surely employers – are left to guess whether and

when a behavioral health center has complied with the WVDHHR

regulations.  In other words, the WVDHHR regulations, on their

own, fail to "provide specific guidance to a reasonable person."

Syl. Pt. 7, Williamson, 200 W. Va. at 423.


Reference to Tudor is fairly unilluminating.  The

Supreme Court of Appeals in Tudor acknowledged that it did not

discuss in any detail the substantial public policy issue.  See

203 W. Va. at 124.  Perhaps, then, it is most appropriate to

note the differences between the Tudor regulation and the WVDHHR

regulations at issue here.  Most striking is the Tudor

regulation's mandate that a nurse be "immediately available,"

while the WVDHHR regulations simply state in general terms that

"qualified personnel" be present in "adequate" numbers during

business hours and that the personnel-to-consumer ratio be such

that ensures "adequate protection and supervision."  Compare id.

at 123 with W. Va. Code. R. Ann. §§ 64-11-5.6.a, 64-11-6.7.a.2.

As REM points out, the Tudor regulation at least provides a

baseline – immediate availability of nurses - against which a

regulated entity could measure its practices.

Although the WVDHHR regulations do not, by themselves,
express a substantial public policy, the Supreme Court of
Appeals does not read statements of policy in a vacuum.   In
Frohnapfel v. ArcelorMittal USA LLC, "the petitioners cited only
to the [West Virginia Water Pollution Control Act's] express
declaration of policy" as proof of a substantial public policy
for their Harless action.   235 W. Va. 165, 171 (2015).   In
deciding that the act pronounced a substantial public policy,
the court looked beyond the general provision cited by the
petitioners and noted that other provisions in the act made
unlawful the respondent's underlying conduct and subjected
violators to both civil and criminal penalties.   Id. at 173.
Similarly, in Birthisel, where the plaintiff failed to identify
a substantial public policy, the court considered not only the
"extremely general" "statute and regulations relied upon by the
plaintiff," but also found that "the disciplinary grounds
contained in the social workers' licensing statute" were not
targeted at the underlying conduct.   188 W. Va. at 379.   Thus, a
relatively broad expression of public policy may still be
sufficiently substantial to maintain a Harless action where the
expression is part of a larger and more specific apparatus.

In the present action, the court is cognizant that the
WVDHHR regulations cited by the parties do not exist in a

vacuum.  Title 64, series 11 of the West Virginia Code of State
Rules contains an abundance of regulations governing behavioral
health centers.  Pertinently, it describes licensure, consumer
rights, and a complaint-filing process whereby employees can
report to the WVDHHR violations of the regulations by a
behavioral health center.  <u>See</u> W. Va. Code R. §§ 64-11-4.1, 4.4,
8.1, 8.2  It also includes enforcement provisions through which
the WVDHHR can inspect and sanction behavioral health centers
that violate the law and place consumers at risk.  <u>See</u> <u>id.</u> §§
64-11-4.3, 4.6, 10.1.c.  Importantly, the WVDHHR can impose
"plans of correction" mandating specific operational changes in
response to practices that it deems as violative of the
regulations.  <u>See</u> <u>id.</u> § 64-11-4.6.

        Turning again to <u>Frohnapfel</u>, the Supreme Court of
Appeals observed the following:

> [T]he case before us does not involve an employer
> being forced to operate oblivious to the compliance
> requirements of its permit.  As the district court
> recognized, permits issued under the Act's authority
> contain the necessary specificity regarding the
> permissible levels of various chemical waste
> effluents.  Moreover, it stands to reason that a
> regulatory area which involves compliance with federal
> clean water standards is necessarily so complex that
> the exactitudes of the governing regulations will not
> typically be delineated in the governing legislation.

235 W. Va. at 172 (footnotes omitted) (citing <u>State ex rel. Ball</u>
<u>v. Cummings</u>, 208 W. Va. 393, 397 (1999)).

Mr. Lynch alleges that REM was subject to a plan of correction issued by the WVDHHR. (Compl. ¶ 10.) Perhaps through some combination of that plan along with other regulatory provisions, REM, like the employer in Frohnapfel, was provided "the necessary specificity regarding" adequate levels of staffing. However, the court cannot reasonably infer from the allegations of the complaint that any such specificity existed. Consequently, for that reason and reasons earlier stated, the court cannot find that Mr. Lynch has identified a substantial public policy, and his Harless retaliatory discharge action fails. Mr. Lynch's complaint must be dismissed, but without prejudice to the prompt filing of an amended complaint that sufficiently identifies a substantial public policy. In so holding, the court is mindful that the Fourth Circuit commands that it must be especially cautious in finding the existence of a substantial public policy in West Virginia law where the Supreme Court of Appeals of West Virginia has not yet opined. See Washington, 870 F.2d at 962-63; see also Tritle v. Crown Airways, Inc., 928 F.2d 81, 84-85 (4th Cir. 1990) (per curiam); cf. Swears v. R.M. Roach & Sons, Inc., 225 W. Va. 699, 704 (2010) (quoting Tiernan v. Charleston Area Med. Ctr., Inc., 203 W. Va. 135, 141 (1998)) ("[C]ourts are to 'proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.'"); Yoho, 175

W. Va. at 561 ("The power to declare an action against public policy is a broad power and one difficult to define. . . . [D]espite the broad power vested in the courts to determine public policy, we must exercise restraint when we use it.").

On a final note, as an alternative to dismissal, REM moves for a more definite statement under Federal Rule of Civil Procedure 12(e).  That rule states as follows, in pertinent part:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.

The Fourth Circuit instructs its courts to read Rule 12(e) in conjunction with Federal Rule of Civil Procedure 8(a), <u>Hodgson v. Va. Baptist Hosp., Inc.</u>, 482 F.2d 821, 822 (4th Cir. 1973), which requires that a complaint include

> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

While REM's request for a more definite statement is mooted by the court's dismissal of this action, the court notes that Mr. Lynch has largely fulfilled his burden under Rule 8(a):

19

the court possesses diversity jurisdiction; Mr. Lynch states that he complained to REM about its various practices and that he was fired in retaliation but has failed to identify a substantial public policy; and he makes a plain demand for relief for, _inter alia_, damages and reinstatement.  (<u>See generally</u> Compl.)  Inasmuch as the court orders dismissal without prejudice, REM's motion for a more definite statement is denied.

## IV. Conclusion

For the reasons stated above, the court ORDERS that REM's motion to dismiss for failing to state a claim upon which relief can be granted be, and hereby is, granted without prejudice to the filing within twenty days of an amended complaint that aptly identifies a substantial policy.  The court further ORDERS that REM's motion for a more definite statement be, and hereby is, denied.  In the absence of the timely filing of an amended complaint as directed herein, this action will be dismissed.

The Clerk is directed to forward copies of this order to all counsel of record and to any unrepresented parties.

ENTER: March 1, 2018

John T. Copenhaver, Jr.
United States District Judge